**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHNNY W. CROSBY, JR.,**

                                        **Plaintiff,**

            **vs.**                                        **1:17-CV-1160**
                                                          **(MAD/DEP)**

**MCDONALD'S OF GUILDERLAND, LLC,**
**FRAN DELEON,** _General Manager of_
_McDonald's of Guilderland, LLC,_
_formerly known as_ Fran "LNU," _and_
**MICHELL WOLF LLC,**

                                **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**KARPF, KARPF LAW FIRM -**               **ADAM C. LEASE, ESQ.**
**BENSALEM OFFICE**
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, Pennsylvania 19020
Attorney for Plaintiff

**MAYNARD, O'CONNOR LAW**                 **ANDREA P. DEMERS, ESQ.**
**FIRM - ALBANY OFFICE**                  **JUSTIN W. GRAY, ESQ.**
6 Tower Place
Albany, New York 12203
Attorneys for Defendants McDonald's
of Guilderland, LLC and Fran DeLeon

**CARTER, CONBOY, CASE,**                 **MICHAEL J. MURPHY, ESQ.**
**BLACKMORE, MALONEY &**                  **BRIENNA L. CHRISTIANO, ESQ.**
**LAIRD, P.C.**
20 Corporate Woods Boulevard
Albany, New York 12211
Attorneys for Defendant Michell Wolf LLC

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On October 18, 2017, Plaintiff Johnny W. Crosby, Jr. ("Plaintiff") filed a Complaint against Defendants McDonald's of Guilderland, LLC ("Guilderland") and Fran DeLeon in the Northern District of New York.  *See* Dkt. No. 1.  On October 30, 2017, Plaintiff filed an Amended Complaint that added Defendant Michell Wolf LLC ("MW") as a party and alleged unlawful employment practices under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*  *See* Dkt. No. 6. Specifically, the Amended Complaint alleged three causes of action: (1) interference and retaliation in violation of the FMLA against all three Defendants, *see id.* at ¶¶ 30-38; (2) discrimination and retaliation in violation of the ADA against Guilderland and MW, *see id.* at ¶¶ 39-44; and (3) discrimination and retaliation in violation of the NYSHRL against Guilderland and MW, *see id.* at ¶¶ 45-47.  On December 18, 2017, Defendants DeLeon and Guilderland filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 22.  On February 12, 2018, MW filed its own motion to dismiss.  *See* Dkt. No. 37.

Currently before the Court are Defendants' motions to dismiss Plaintiffs' Amended Complaint.  For the following reason, the motions are denied.

## II. BACKGROUND

On April 15, 2015, Plaintiff was hired to perform grill and maintenance work by the McDonald's franchise located at 1602 Western Avenue (the "Franchise") in Guilderland, New York.  *See* Dkt. No. 6 at ¶¶ 11, 16-17.  Plaintiff suffers from various disabilities and serious health conditions, including an inguinal hernia, which occasionally limit "Plaintiff's ability to work, stand, squat[,] and lift."  *Id.* at ¶ 18.  On occasion, Plaintiff would need accommodations, such as taking short breaks and time off for medical treatment, because of his disabilities.  *See id.* at ¶ 20.

2

Plaintiff had told Defendant DeLeon, a high level manager with authority to make decisions concerning the terms and conditions of Plaintiff's employment, about his disabilities. *See id.* at ¶¶ 10, 21. Despite his disabilities, Plaintiff performed well at his job during the course of his employment. *See id.* at ¶ 19.

In July 2016, Plaintiff took six weeks of FMLA qualifying leave for medical treatment. *See id.* at ¶ 22. Plaintiff returned to work in mid-August 2016. *See id.*

On September 14, 2016, Plaintiff injured himself while performing freezer maintenance at the Franchise and went to the emergency room for treatment. *See id.* at ¶ 23. Plaintiff returned to work on September 15, 2016, and requested a light duty accommodation. *See id.* That day, Plaintiff's employment was terminated. *See id.* at ¶ 24. Plaintiff alleges that Defendant DeLeon told him "that he was terminated for reasons directly related to his health conditions." *Id.* On November 8, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Guilderland regarding Plaintiff's termination on September 15, 2016 (the "First Charge"). *See id.* at ¶ 25.

At all times during the course of Plaintiff's employment, the Franchise was owned by Guilderland. *See id.* at ¶¶ 8, 11. On January 2, 2017, MW purchased the Franchise from Guilderland. *See id.* at ¶ 11. Defendant DeLeon continued her managerial role under the new ownership. *See id.* at ¶ 10. Plaintiff alleges that after the purchase, MW continued to operate the Franchise without interruption and with the same employees. *See id.* at ¶ 12. Plaintiff further alleges that Guilderland and MW are interrelated entities because they have a common ownership and their management and finances are under centralized control. *See id.* at ¶ 13.

In February 2017, Plaintiff was offered to be rehired or reinstated by the Franchise at his previous level of compensation. *See id.* at ¶ 26. Plaintiff completed an employment application

and waited to be informed of his start date.  *See id.*  On May 1, 2017, Plaintiff was contacted by Lamar Johnson, the general manager in training, who told Plaintiff that the Franchise would not rehire him because Defendant DeLeon had advised the owners against rehiring him.  *See id.* at ¶ 27.

On June 3, 2017, Plaintiff filed a second charge of discrimination with the EEOC (the "Second Charge"), alleging that the Franchise terminated and refused to rehire him because of his health conditions.  *See id.* at 12.  In the Second Charge, Plaintiff identified Guilderland as his employer and used the Franchise's address as its location.  *See id.*

On August 24, 2017, the EEOC issued a notice of right to sue for the Second Charge.  *See id.* at 13.  The EEOC sent a copy of the notice of right to sue to the Franchise and to Plaintiff's counsel.  *See id.*

### III. DISCUSSION

**A.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471

F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

## B.    Unlawful Termination

### 1. Time Bar

In order to pursue an ADA claim in federal court, a plaintiff ordinarily must first file a charge of discrimination with the EEOC or the appropriate state agency. *See Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (citing 42 U.S.C. § 2000e-5(e)). Defendants note that the ADA, which incorporates the administrative exhaustion requirements of Title VII, requires a plaintiff to "file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal

employment agency, within 300 days of the alleged discriminatory action." *See* Dkt. No. 22-4 at 5 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)). Accordingly, Defendants argue that because the Amended Complaint only includes a copy of the Second Charge, which was filed more than 180 days after Plaintiff was terminated on September 15, 2016, Plaintiff failed to bring his wrongful termination charge before the EEOC in a timely manner. *See id.* at 6.

The Amended Complaint alleges that Plaintiff filed the First Charge in November 2016. A complaint does not need to attach copies of the EEOC charge in order to satisfy the exhaustion requirement—specific allegations that the plaintiff filed charges with the EEOC are sufficient to withstand a motion to dismiss. *See Spillman v. Carter*, 918 F. Supp. 336, 341 (D. Kan. 1996); *see also Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1271 (D.N.M. 2011) (dismissing where the complaint only stated that the plaintiff "timely filed charges . . .with the [EEOC] and satisfied all administrative requirements for filing this suit"). As the First Charge was filed well within 180 days of his termination and Defendants have not challenged the sufficiency of this allegation, the Amended Complaint has plausibly alleged facts that satisfy the exhaustion requirement.

Further, under a work-sharing agreement between the New York State Department of Human Rights ("NYSDHR") and the EEOC, an EEOC charge is "deemed to have been filed 'initially' with the NYSDHR." *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327 (2d Cir. 1999). As a result, an "NYSDHR proceeding . . . formally beg[ins] and end[s] upon the EEOC's receipt of the charge . . . before [it is] . . . deemed as filed with the EEOC." *Id.* Accordingly, "a complaint must be filed with the EEOC within 300 days of the alleged discriminatory act." *Smiley v. Golub Corp.*, No. 14-CV-0641, 2015 WL 566323, *3 (N.D.N.Y. Feb. 10, 2015)

6

(citations omitted).  Given that the Second Charge was filed within 300 days from Plaintiff's termination, the Second Charge is also sufficient to satisfy the exhaustion requirement.

### 2. Discrimination Under the ADA and NYSHRL

In order to make out a prima facie case of discrimination or retaliation under the ADA, a the plaintiff must demonstrate that

> "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability."

*Kinneary v. City of New York*, 601 F.3d 151, 156 (2d Cir. 2010) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).  "The elements of a prima facie case for discrimination prohibited by the NYSHRL are the same as a claim under the ADA[.]"  *Starr v. Time Warner, Inc.*, No. 07 Civ. 5871, 2007 WL 4144627, *6 (S.D.N.Y. Nov. 21, 2007) (citation omitted).

The ADA defines "disability" as: "A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; B) a record of such an impairment; or C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  "The mere presence of a medical condition does not establish that a plaintiff is disabled."  *O'Donnell v. King B 100, LLC*, No.14-cv-1345, 2016 WL 7742779, *9 (N.D.N.Y. May 3, 2016) (citations omitted).  "In addition, it is well settled that temporary impairments with little or no long-term permanent impact are not disabilities under the ADA."  *Id.* (citations omitted).

Such temporary or "transitory" impairments are defined "as lasting six months or less."  42 U.S.C. § 12102(3)(B).

Here, the Amended Complaint alleges that Plaintiff suffered from health problems, including an inguinal hernia, which limited his ability to stand, squat, lift, and work.  It also alleges that Defendant DeLeon told Plaintiff he was terminated because of these health problems.  Thus, the Amended Complaint alleges that Plaintiff was terminated due to impairments that limited major life activities.  Defendants argue that Plaintiff has not alleged a disability covered under the ADA for five reasons: (1) the Amended Complaint states that Plaintiff returned to work from his FMLA leave without restrictions; (2) multiple cases have found that a hernia is not a covered disability; (3) other than the hernia, the Amended Complaint does not identify any specific disabilities; (4) Plaintiff has not identified how he was injured on September 14, 2016; and (5) Plaintiff has not linked that injury to his inguinal hernia.  *See* Dkt. No. 22-4 at 8-9.

The Amended Complaint does not allege that Plaintiff was able to return to work from his FMLA leave without restrictions.  The Amended Complaint only states that Plaintiff returned to work in mid-August.  Although the Amended Complaint does not specifically state that Plaintiff had restrictions, it does state that Plaintiff's health conditions necessitated accommodations during the course of his employment.  *See* Dkt. No. 6 at ¶ 20.  Additionally, the Amended Complaint does not state that Plaintiff was cured of his ailments—in fact, it states the opposite, that Plaintiff continues to suffer from them to this day.  Making all reasonable inferences in favor of the non-moving party, the Court cannot conclude that Plaintiff returned from FMLA leave cured of his previous ailments.

With regards to Defendants' second argument, the cases that Defendants cite in support of their claim that a hernia cannot be a disability under the ADA are unpersuasive.  Almost all of the

cases that Defendants cite in support of their argument predate the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (codified at 42 U.S.C. § 12101 *et seq.*). *See* Dkt. No. 22-4 at 8.  The ADAAA, which took effect on January 1, 2009, broadened the scope of what constitutes a covered disability.  *See Schmidt v. Town of Cheverly, MD.*, 212 F. Supp. 3d 573, 581 (D. Md. 2016).  Since then, federal district courts have repeatedly found that a hernia can qualify as a covered disability.  *See id.* (citing cases).

Although some post-ADAAA cases have dismissed hernia claims, they did so because the complaint did not allege sufficient facts to establish a covered impairment, not because of a *per se* preclusion.  Like any other covered impairment, the hernia must substantially limit a major life activity.  *See, e.g.*, *Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 263 (E.D.N.Y. 2015); *Butler v. BTC Foods Inc.*, No. CIV.A. 12-492, 2012 WL 5315034, *2 (E.D. Pa. Oct. 19, 2012).  Further, a hernia claim must also allege that the hernia caused a long-term impairment.  *See Davis v. Vermont, Dep't of Corr.,* 868 F. Supp. 2d 313, 327 (D. Vt. 2012); *see also Peoples v. Langley/Empire Candle Co.*, No. 11-2469, 2012 WL 171340, *2 (D. Kan. Jan. 20, 2012).

Here the Amended Complaint includes allegations Plaintiff's health problems limited Plaintiff's ability to lift, squat, and stand, which constitute limitations in major life activities.  The Amended Complaint alleges that the effects of his health conditions remained when the Amended Complaint was filed.  Because this period is greater than six months, the impairment was not transitory.  As such, the Amended Complaint plausibly alleges, albeit barely, specific factual averments as to both the hernia's effect and duration to establish a disability under the ADA.

Finally, given that Plaintiff's allegations regarding his hernia are sufficient to sustain the claim, the Court need not address Defendants' arguments that Plaintiff did not specify his other

health problems, the nature of the September 14, 2016 injury, or how said injury was related to Plaintiff's hernia.

### 3. FMLA Interference and Retaliation Claims

The FMLA provides eligible employees an "entitlement" to twelve workweeks per year of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). At the end of a period of FMLA leave, the employee has the right to be restored to the position, or its equivalent, that he or she held prior to taking leave. 29 U.S.C. § 2614(a)(1)(A). The FMLA expressly creates a private cause of action for equitable relief and money damages against any employer who violates Section 2615. *See* 29 U.S.C. § 2617(a)(2); *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003).

"FMLA claims come in at least two varieties: interference and retaliation." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017) (citation omitted). "In a general sense, an employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Id.* (citation omitted). "'Retaliation' claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." *Id.* (citation omitted).

### a. FMLA Interference

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio v. Culinary Instit. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016) (citing 29 U.S.C. §

2615(a)(1)).  To plausibly allege FMLA interference, the plaintiff must claim the following: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Id.*

In the present matter, the Court finds that Plaintiff has failed to allege a plausible FMLA interference claim.  Plaintiff alleges that he received six weeks of FMLA from Defendants from July 2016 until he returned to work in mid-August 2016.  *See* Dkt. No. 6 at ¶ 22.  Thereafter, Plaintiff alleges that on September 14, 2016, he "injured himself again at work and required treatment in the emergency room." *Id.* at ¶ 23.  Plaintiff claims that when he returned to work the following day, "he requested the reasonable accommodation of light duty." *Id.*  Upon requesting the reasonable accommodation, Plaintiff claims that he was terminated that same day. *See id.* at ¶ 24.

Nothing in the Amended Complaint sets forth a claim of FMLA interference.  The facts make clear that Plaintiff was requesting a "reasonable accommodation" when he was terminated. He did not claim that he made an additional request for FMLA leave and that Defendants somehow denied him that leave.

Based on the foregoing, the Court grants Defendants' motion insofar as it seeks dismissal of Plaintiff's FMLA interference claim.

### b. FMLA Retaliation

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under

circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).  An inference of retaliatory intent can be established "when there is a basis for a jury to conclude that 'a causal connection [exists] between the plaintiff's protected activity and the adverse action taken by the employer.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (citing *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003)); *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

FMLA retaliation claims grounded in § 2615(a)(1) use a "motivating factor" causation standard.  *See Woods*, 864 F.3d at 166.  "Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988); *see also Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir. 1986).  "In order for temporal proximity to establish causality, the intervening period must be 'very close.'" *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 314 (E.D.N.Y. 2003) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)).  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001).  District courts have generally found, however, that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Ruhling v. Tribune Co.*, No. 04 Civ. 2430, 2007 WL 28283, *23 (E.D.N.Y. Jan. 3, 2007) (citing cases); *see also Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962, 2007 WL 1174891, *21 (E.D.N.Y. Apr. 19, 2007) (noting that "district courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation").

Defendants contend that Plaintiff has failed to plausibly allege a causal connection between the FMLA leave taken and any adverse employment action.  *See* Dkt. No. 22-4 at 7. Plaintiff, however, alleges that he was terminated on September 15, 2016, one day after he suffered an injury at work and approximately one month after his return from FLMA leave.  *See* Dkt. No. 6 at ¶¶ 22-24.  The close temporal proximately between Plaintiff's return from FMLA leave and his termination is sufficient to satisfy the causal connection requirement at this stage. *See Cooper v. N.Y.S. Nurses Ass'n*, 847 F. Supp. 2d 437, 448-49 (E.D.N.Y. 2012) (holding that evidence of close temporal proximity between management-level employee's FMLA leave and her termination, less than two months after her return, was sufficient to establish fourth element of her prima facie case of FMLA retaliation, *i.e.*, that adverse employment action occurred under circumstances giving rise to inference of retaliation).

Based on the foregoing, the Court denies Defendants' motion to dismiss Plaintiff's FMLA retaliation claim.

### 4. ADA Retaliation

Defendants further argue that the Amended Complaint fails to allege that Plaintiff "participated in a Title VII investigation or opposed a discriminatory practice."  *See* Dkt. No. 22-4 at 9 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 172 (2d Cir. 2005).  Thus, Defendants contend that the Amended Complaint does not allege Plaintiff participated in a protected activity under Title VII.

Initially, the Court notes that Plaintiff is alleging retaliation claims under the ADA and the FMLA, not Title VII.  As such, Defendants arguments pertaining to Title VII are irrelevant.

Second, to the extent that Defendants are attempting to argue that Plaintiff failed to allege an ADA retaliation claim, the Court disagrees.  In his complaint, Plaintiff specifically states that

on September 15, 2016, after he returned to work from receiving medical treatment at the

emergency room, he "requested further accommodations." Dkt. No. 6 at ¶ 24. That same day,

Plaintiff was terminated and informed by Defendant Fran that he was being terminated because of

his "health conditions." *Id.* Considering these allegations and the other facts set forth above, the

Court finds that Plaintiff plausibly alleges an ADA retaliation claim. *See Weixel v. Bd. of Educ.*

*of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002) (holding that "seeking reasonable

accommodation[s] . . . constitutes protected activity under [the ADA]").

Based on the foregoing, the Court denies Defendants motions insofar as they seek the

dismissal of Plaintiff's ADA retaliation claim.

### 5. MW's Successor Liability

MW argues it is not liable for conduct prior to its acquisition of the Franchise. *See* Dkt.

No. 37-4. At this stage of the litigation, the Court disagrees.

In employment cases,"successor liability operates as 'an extra-contractual remedial tool

for imposing certain labor obligations on a new employer that has taken over operations of an old

employer.'" *E.E.O.C. v. Nichols Gas & Oil, Inc*., 518 F. Supp. 2d 505, 510 (W.D.N.Y. 2007)

(citations omitted); *see also* 29 C.F.R. § 825.104(a). "For an employer to be considered a

successor there must be substantial continuity of identity in the business enterprise before and

after a change." *Forde v. Kee Lox Mfg. Co.*, 584 F.2d 4, 5 (2d Cir. 1978) (quotation omitted); *see*

*also Abdel-Khalek v. Ernst & Young, L.L.P.*, No. 97 CIV. 4514, 1999 WL 190790, *7 (S.D.N.Y.

Apr. 7, 1999) (applying Title VII's substantial continuity test to an ADA claim); 29 C.F.R. §

825.107(a) (noting that the FMLA uses the same factors as Title VII for "determining successor liability for violations of the predecessor").[1]

Under the substantial continuity test, courts are guided by three factors: "(1) whether the successor had notice of the claim prior to the acquisition; (2) whether the successor substantially continued the business operations of its predecessor following the acquisition; and (3) whether the predecessor is able to provide the relief sought." *Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d at 512 (citing, *inter alia, E.E.O.C. v. Barney Skanska Constr. Co.*, 2000 WL 1617008, *2 (S.D.N.Y. 2000)); *see also* 29 C.F.R. § 825.107(a). "No one factor is controlling, and it is not necessary that each factor be met to find successor liability. *Barney Skanska Constr. Co.*, 2000 WL 1617008 at *2.

### a. Notice

According to the Amended Complaint, Plaintiff filed the First Charge with the EEOC in November 2016. The First Charge provided Guilderland actual notice of Plaintiff's disability claims. Further, regardless of whether the First Charge provided actual notice of Plaintiff's

---

[1] There is some uncertainty as to whether a court should apply the state common law successor liability test or the broader substantial continuity test. *See New York v. Nat'l Servs. Indus., Inc.*, 352 F.3d 682, 686 (2d Cir. 2006). The parties have each addressed both the common law successor liability test and the broader substantial continuity test.

The Second Circuit, however, has stated that "[w]ithin federal law, the substantial continuity doctrine is well established in the area of labor law." *Nat'l Servs. Indus., Inc.*, 352 F.3d at 686. Further, the courts that have confronted this issue have generally adopted the same analysis that they use for determining successor liability in other employment contexts. *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 782-83 (9th Cir. 2010) (collecting cases). As such, the Court declines to apply the common law successor liability test in this case. *See Rios v. Core Facility Servs. LLC*, No. 16CV1748, 2018 WL 1545684, *10 (E.D.N.Y. Mar. 29, 2018); *see also Bautista v. Beyond Thai Kitchen, Inc.*, No. 14 CIV. 4335, 2015 WL 5459737, *3 (S.D.N.Y. Sept. 17, 2015) (applying the substantial continuity test to a Fair Labor Standards Act claim despite recognizing that "[t]he Second Circuit has yet to address whether the substantial continuity test applies in the FLSA context").

FMLA claims,[2] the existence of the charge coupled with the close temporal proximity between Plaintiff's FMLA leave and termination would have given Guilderland notice as to its potential FMLA liability.  As the Amended Complaint alleges that Guilderland and MW share ownership and management, it is reasonable to infer that any notice possessed by Guilderland would be imputed onto MW.  Given that the Amended Complaint has plausibly alleged that MW had notice of the potential claims against the Franchise, the first factor weighs in favor of successor liability.

### b. Continuity

With respect to continuity, courts should consider the identity of the workforce and physical location.  *See id.*; *E.E.O.C. v. Local 638*, No. 71 CIV. 2877, 1988 WL 25151, *13 (S.D.N.Y. Mar. 9, 1988), *aff'd*, 700 F. Supp. 739 (S.D.N.Y. 1988).  According to the Amended Complaint, MW continued to operate the Franchise as a McDonald's at the same location and with the same workforce and management.  Accordingly, this factor weighs in favor of finding successor liability.  *See Lamar v. Inst. for Family Health,* No. 1:09-CV-1154, 2011 WL 2432925, *8 (N.D.N.Y. June 16, 2011), *aff'd*, 472 Fed. Appx. 98 (2d Cir. 2012).

### c. Ability of Predecessor to Provide Relief

As to the ability to provide relief,

> "[f]ailure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with a[n] [in]complete remedy. In the case where the predecessor company no longer had any assets, monetary relief would be precluded."

*Fennell v. TLB Plastics Corp.*, No. 84 CIV. 8775, 1989 WL 88717, *4 (S.D.N.Y. July 28, 1989)

---

[2] "[T]here is no administrative prerequisite to filing an FMLA claim; the FMLA does not require an exhaustion of administrative remedies prior to initiation of a lawsuit under its provisions."  *Manos v. Geissler*, 377 F. Supp. 2d 422, 427 (S.D.N.Y. 2005) (citing 29 U.S.C. § 2617(a)(2); *Breedlove v. Cabou*, 296 F. Supp. 2d 253, 275-76 (N.D.N.Y. 2003)).

(citing *E.E.O.C. v. MacMilan Bloedel Containers, Inc.*, 503 F.2d 1086, 1091-92 (6th Cir. 1974)).

Plaintiff has alleged that "MW is in the best and only position to provide relief . . . as it is unclear at this stage of the litigation whether Defendant Guilderland is capable of providing any relief, having divested itself of the business operations which employed Plaintiff and its assets therein." *See* Dkt. No. 6 at ¶ 12.  Given that the Amended Complaint alleges that Guilderland had divested itself of the Franchise, it is unclear at this stage whether it has any additional assets and if it will be able to provide relief.  As such, the third factor weighs in favor of finding successor liability.

### d. Weighing the Factors

Because all three factors weigh in favor of finding MW liable as a successor to Guilderland, the Court finds that Plaintiff has plausibly alleged that MW is liable as a successor in interest.  Therefore, the Court must deny MW's motion to dismiss the claims against it arising from the termination.

## C.      Failure to Rehire

The Amended Complaint alleges that Defendants wrongfully refused to rehire him in early 2017.  A failure-to-rehire claim can be the basis for a cause of action under the ADA or FMLA. *See Nelson v. City of New York*, No. 11 CIV. 2732, 2013 WL 4437224, *8 (S.D.N.Y. Aug. 19, 2013) (recognizing a failure to rehire action brought under the ADA); *McFarlane v. Chao*, No. 04CV4871, 2007 WL 1017604, *23 (S.D.N.Y. Mar. 30, 2007) (recognizing a failure to rehire action brought under the FMLA).  In order to establish a failure-to-rehire claim, a plaintiff must "first establish a prima facie case of discrimination or retaliation; and that requires, inter alia, that [he] proffer evidence that the decision not to rehire [him] was made under circumstances giving

rise to an inference of discriminatory or retaliatory intent." *Yetman v. Capital Dist. Transp. Auth.*, 669 Fed. Appx. 594, 595 (2d Cir. 2016).

### 1. Refusal to Rehire Claim Against MW

MW argues that Plaintiff failed to allege facts that MW refused to rehire him because of his disability or utilization of his FMLA leave.  *See* Dkt. No. 37-4 at 12-14.  The Court disagrees.

The Amended Complaint states that Defendant DeLeon advised MW against rehiring Plaintiff.  Plaintiff alleges that when he was originally terminated, Defendant DeLeon told him that the decision was made, in part, due to his physical ailments.  Further, Plaintiff also alleges that Defendant DeLeon terminated him in retaliation for utilizing FMLA leave.  Considering these facts, the Court finds that Plaintiff has plausibly alleged facts that give rise to an inference of retaliatory and discriminatory intent behind the Franchise's failure to rehire him in 2017.

### 2. Refusal to Rehire Claim Against Guilderland

Guilderland argues that it is not liable for refusing to rehire Plaintiff because the decision was made after Guilderland sold the Franchise to MW.  *See* Dkt. No. 22-4 at 10.  Plaintiff has not responded to this argument and the Amended Complaint makes clear that Guilderland was no longer operating the Franchise when the Franchise refused to rehire Plaintiff.  As such, Guilderland is correct that it is not liable for any claims arising from the Franchise's decision to not rehire Plaintiff.  Therefore, the Court grants Defendants Guilderland's motion as to Plaintiff's refusal to rehire claim.

### 3. MW's Identity of Interest

Given that Guilderland is not liable for any potential refusal to rehire claims, MW cannot be liable under a theory of successor liability.  Further, MW notes that Plaintiff failed to identify

it as a party in the Second Charge.  *See* Dkt. No. 37-4 at 5.  Because courts generally lacks subject

matter jurisdiction over parties who were not identified in an EEOC charge, *see Bridges v.*

*Eastman Kodak Co.*, 822 F. Supp. 1020, 1023 (S.D.N.Y. 1993), MW argues that any ADA claims

arising out of the refusal to rehire should be dismissed.  *See* Dkt. No. 37-4 at 5-6.

It is, however, well-established law in the Second Circuit that courts take a "flexible

stance" in interpreting these procedural requirements.  *See Egelston v. State Univ. College at*

*Geneseo*, 535 F.2d 752, 754-55 (2d Cir. 1976).  As a result of this "flexible stance," the Second

Circuit has developed an "identity of interest" exception which allows plaintiffs to bring claims

against a defendant in federal court despite having not named that defendant in their

administrative charges.  *See Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (citing

*Eggleston v. Chi. Journeyman Plumbers' Local Union No. 130*, 657 F.2d 890, 905-06 (7th Cir.

1981)).  The identity of interest exception is comprised of the following four factors:

> "1) whether the role of the unnamed party could through reasonable
> effort by the complainant be ascertained at the time of the filing of
> the EEOC complaint; 2) whether, under the circumstances, the
> interests of a named [party] are so similar as the unnamed party's
> that for the purpose of obtaining voluntary conciliation and
> compliance it would be unnecessary to include the unnamed party
> in the EEOC proceedings; 3) whether its absence from the EEOC
> proceedings resulted in actual prejudice to the interests of the
> unnamed party; [and] 4) whether the unnamed party has in some
> way represented to the complainant that its relationship with the
> complainant is to be through the named party."

*Id.* at 209-10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977) ("*Glus I*")).

These four considerations are factors, not elements, and "no one factor is dispositive."  *Husnay v.*

*Enviromaster Int'l Corp.*, 275 F. Supp. 2d 265, 267 (N.D.N.Y. 2003) (citation omitted).

When considering the identity of interest exception, "courts are to evaluate each factor in

light of the statutory purposes underlying" the ADA.  *Dortz v. City of New York*, 904 F. Supp.

127, 143 (S.D.N.Y. 1995) (citing *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980) ("*Glus II*")).  The statutory purpose of eliminating employment discrimination is not the only relevant consideration.  Courts should also remember that "[r]equiring a plaintiff to name all defendants in her EEOC charge fulfills two main goals: 1) providing notice to the charged party of the alleged violation; and 2) securing voluntary compliance."  *Clarke v. Flushing Manor Care Ctr.*, No. 02 Civ. 3079, 2003 WL 1338663, *2 (S.D.N.Y. Mar. 18, 2003) (citation omitted).  Ultimately, it is the plaintiff who has the burden of proving that the identity of interest exception applies.  *See Jackson v. New York City Transit*, No. 05-CV-1763, 2005 WL 2664527, *2-*3 (E.D.N.Y. Oct. 17, 2005) (citing *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 473-74 (S.D.N.Y. 2004)).[3]

### a. Knowledge & Misrepresentation of Identity

The first *Johnson* factor asks "'whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint[.]'"  *Johnson*, 931 F.2d at 209 (quoting *Glus I*, 562 F.2d at 888).  The first factor weighs in favor of finding an "identity of interest" where the plaintiff unintentionally names the

---

[3] Although not raised by the parties, some district courts in the Second Circuit have held that parties represented by counsel before the EEOC or equivalent state agency are not permitted to take advantage of the identity of interest exception.  *See Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 275 (D. Conn. 2010) (holding that *pro se* status at the administrative stage is required before applying the "identity of interest" exception).  Other courts, however, have either entirely disavowed such a requirement or have simply treated representation by counsel at the administrative stage as another factor to consider in deciding whether the exception should apply.  *See Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 214-15 (N.D.N.Y. 2013) (discussing the various ways district courts have applied the identity of interest exception when a party is represented by counsel at the administrative stage).  In the absence of Second Circuit authority imposing *pro se* status as a threshold requirement, this Court declines to do so.  Rather, the Court finds that a plaintiff's legal representation at the time he or she filed a complaint with the EEOC is simply a relevant consideration in evaluating the first and fourth *Johnson* factors.  *See Senecal*, 976 F. Supp. 2d at 216 (citation omitted); *see also Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 787-88 (E.D.N.Y. 1999) (citations omitted).

wrong party in their EEOC charge due to being unaware of the business's actual corporate

identity.  *See Cobb v. XSPORT Fitness, Inc.*, No. 09 CV 3553, 2010 WL 1741370, *6 (E.D.N.Y.

Apr. 28, 2010) (weighing the first factor in the plaintiff's favor because the "plaintiff likely did

not realize that his actual employer had a different corporate name than the name under which it

did business and, thus, did not know he had to ascertain a different name for his employer to

include on his EEOC charge").  Further, courts will consider whether the plaintiff could have

ascertained the unnamed party's involvement through available documents, such as paychecks or

a notification of a change in ownership.  *See Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d

199, 219-20 (N.D.N.Y. 2013); *see also Carcasole–Lacal v. Am. Airlines, Inc.*, No. CV-02-4359,

2003 WL 21525484, *4 (E.D.N.Y. July 8, 2003).

 In *Carcasole–Lacal*, 2003 WL 21525484 at *4, the plaintiff brought a discrimination

claim against American Airlines.  The plaintiff, a former employee of Trans World Airlines

("TWA"), failed to identify American Airlines in her EEOC charge because she was unaware that

American Airlines had purchased certain operations, including her division, from TWA during

TWA's dissolution.  *See id.* at *2.  Ruling for the defendant, the court noted that because TWA

had notified its employees that American Airlines was acquiring certain assets, the plaintiff had

sufficient notice to uncover the identity of her actual employer.  *See id.* at *4-*5.

 The fourth *Johnson* factor asks "whether the unnamed party has in some way represented

to the complainant that its relationship with the complainant is to be through the named party[.]"

*Johnson*, 931 F.2d at 210 (quoting *Glus I*, 562 F.2d at 888).  This factor does not require an

affirmative misrepresentation—passive conduct of failing to disclose the corporate identity of a

business will weigh in favor of an identity of interests.  *See Cobb*, 2010 WL 1741370 at *6.

Here, Plaintiff and his counsel had no reason to suspect that there had been a change in ownership and MW took no steps to reveal its role as the owner of the Franchise.  When Plaintiff was terminated, Guilderland owned the Franchise.  As such, any employment documents that he possessed would have been devoid of MW's subsequent involvement with the Franchise.  After MW's takeover of the Franchise, they continued to use the same facility with the same employees and management.  It is reasonable to infer that as a result of this seamless transition, there was no general notice of the change in ownership to non-employees.  Plaintiff's first contact with the Franchise under MW's ownership was when he reapplied for his position in 2017.  The Amended Complaint does not allege any facts that suggest MW identified itself as the new owner during this interaction.  Finally, when Plaintiff submitted the Second Charge identifying Guilderland as the owner and accusing the Franchise of impermissibly refusing to rehire him, MW did not take any steps to correct Plaintiff's obvious and understandable mistake.

Taken as true, the Amended Complaint suggests that Plaintiff was completely unaware of the change in ownership and MW passively misrepresented their involvement.  Similar to *Cobb*, Plaintiff mistakenly named Guilderland in the Second Charge because he had no reason to suspect that the Franchise was owned by MW.  Unlike *Carcasole-Lacal*, Plaintiff had no reason to suspect the change of ownership—even MW concedes that Plaintiff "was not aware of the purchase of the [Franchise]" until after he filed the Second Charge.  Dkt. No. 37-4 at 7.

The fact that Plaintiff was represented by counsel in the Second Charge does not alter this analysis.  The Second Charge identified the Franchise's perceived corporate owner and reasonable efforts by Plaintiff's counsel, such as reviewing Plaintiff's employment documents, would not have suggested a change in ownership.  Given that there was no "evidence available to suggest to . . . counsel that [MW was] involved," *Olvera-Morales*, 322 F. Supp. 2d at 218, the Amended

Complaint does not allege anything to suggest that Plaintiff or his counsel had any reason to further investigate the actual owner.  As such, even though Plaintiff was represented by counsel, the first and fourth *Johnson* factors weigh in favor of finding an "identity of interest" between Guilderland and MW.

### b. Similarity of Interests

The second *Johnson* factor requires the Court to determine "'whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings[.]'"  *Johnson*, 931 F.2d at 209-10 (quoting *Glus I*, 562 F.2d at 888). This factor is designed to measure whether "the unnamed party's interests were represented adequately at the administrative proceeding." *Zustovich*, 2009 WL 735062 at *9 (citation omitted).

This factor acknowledges that it is not always necessary for an unnamed defendant to be involved in the EEOC's voluntary compliance session because the named defendant, who was present for that session, may have shared interests with the unnamed defendant and represented those interests to the EEOC.  *See Johnson*, 931 F.2d at 209-10 (quoting *Glus I*, 562 F.2d at 888). The more closely the named and unnamed defendants share interests, the less likely the unnamed defendant's absence makes litigation inevitable.  *See Schade v. Coty, Inc.*, No. 00 CIV 1568, 2001 WL 709258, *5 (S.D.N.Y. June 25, 2001).

Although Guilderland and MW are separate entities, Plaintiff has alleged that Guilderland and MW have common ownership and integrated their activities, labor relations, and management.  The common ownership and integrated control are indicative of shared pecuniary interests and common representation.  As such, the Court finds that the Amended Complaint

plausibly alleges that Guilderland and MW's interests were aligned, which weighs in favor of finding an "identity of interest."

### c. Prejudice

The third *Johnson* factor asks "'whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party[.]'" *Johnson*, 931 F.2d at 210 (quoting *Glus I*, 562 F.2d at 888). This factor weighs strongly in favor of the plaintiff if the unnamed defendant had actual notice of the EEOC charge. *See Tarr*, 958 F. Supp. at 795 ("The third factor subsumes the underlying issue of notice. Courts have held that a plaintiff's failure to name or include a party in the agency complaint does not prejudice that party where it had notice of the claims against it and the opportunity to intervene") (citation omitted). This interpretation has been widely adopted by the courts throughout the Circuit. *See Zhao v. State Univ. of N.Y.*, 472 F. Supp. 2d 289, 306 (E.D.N.Y. 2007); *Parker v. City of New York*, No. 04CV2257, 2004 WL 2671634, *3 (E.D.N.Y. Nov. 18, 2004). The third factor weighs in favor of the unnamed defendant when it did not have an opportunity to be present at the EEOC proceedings. *See, e.g.*, *Kearney v. Kessler Family LLC*, No. 11-CV-006016, 2011 WL 2693892, *3-*4 (W.D.N.Y. July 11, 2011); *Manos v. Geissler*, 377 F. Supp. 2d 422, 427 (S.D.N.Y. 2005); *Gallagher v. IBEW*, 127 F. Supp. 2d 139, 143-44 (N.D.N.Y. 2000).

According to the Amended Complaint, MW took over operating the Franchise in January 2017. The business address listed on the Second Charge was the Franchise's address and the EEOC sent notices regarding the Second Charge to the Franchise. *See* Dkt. No. 6 at 12-13. MW initially offered to rehire Plaintiff in February 2017, which suggests that MW was aware of the First Charge and working to ameliorate it. Further, the Amended Complaint alleges that MW and Guilderland had shared ownership and management. As such, knowledge of any EEOC

communications directed towards Guilderland would also have been known by the management of MW, meaning that MW would have had notice of the Second Charge but chose not to intervene.  Thus, the third factor weighs in favor of finding an identity of interest.

### d. Weighing the Factors

Because all four factors weigh in favor of finding that MW and Guilderland share an "identity of interest," the Court need not weigh the factors against each other and concludes that the Court does have subject matter jurisdiction.  Therefore, the Court denies MW's motion to dismiss the claims against it arising from the failure to rehire.

**D.    Individual Liability of Defendant DeLeon**

Defendants argue that Defendant DeLeon is not liable for any ADA violations because individuals cannot be personally liable under the ADA.  *See* Dkt. No. 22-4 at 10.  Because the Amended Complaint does not assert an ADA claim against Defendant DeLeon, the Court denies this aspect of Defendants' motion.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motions to dismiss (Dkt. No. 22 and Dkt. No. 37) are **GRANTED in part and DENIED in part**;[4] and the Court further

---

[4] Defendants' motions to dismiss are granted as to the FMLA interference claim against all Defendants and the refusal to rehire claim asserted against Defendant Guilderland.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 2, 2018
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

26